UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JUDITH E. UPSHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-47 |
| | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Judith E. Upshaw seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On October 16, 2006, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began August 1, 2006. [Tr. 202-09]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On June 23, 2009, a hearing was scheduled before an ALJ to review determination of Plaintiff's claim, but the parties were not ready to proceed with a hearing on that date. [Tr. 98-105]. A second hearing was convened on

November 10, 2009, at which time the ALJ heard testimony from the Plaintiff and JoAnn Bullard, a vocational expert. [Tr. 83-97]. On November 24, 2009, the ALJ found that the Plaintiff was not disabled.

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.    ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: myocardial infraction, hypertension, and asthma (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except sit 3 hours, at one time, and stand and/or walk 2 hours at one time, in an 8 hour workday. She should avoid environmental pollutants, such as dust, smoke, chemicals, fumes, noxious gases, or work around excessive humidity, and any work that would expose her to temperature extremes either hot or cold. The claimant is limited to performing simple, repetitive non-detailed tasks where co-worker and public contact is casual and

2

infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 21, 1955 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 70-78].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her

4

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rogers v. Comm'r of Soc. Sec.,  486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence,

5

nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV. **POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ erred in his residual functional capacity ("RFC") determination. The Plaintiff maintains that the ALJ erred in evaluating the severity of Plaintiff's mental impairments, and therefore, he did not properly consider the effect of the Plaintiff's mental impairments on the Plaintiff's ability to work. [Doc. 12 at 8]. The Plaintiff contends that

6

the ALJ should have afforded additional weight to the disability examination performed by Ellen Denny, Ph.D. [Doc. 12 at 9-10].

The Commissioner first notes that the Plaintiff has challenged the ALJ's RFC determination only to the extent it relates to her mental impairments. [Doc. 14 at 5]. The Commissioner maintains that the ALJ's RFC finding is supported by substantial evidence. [Doc. 14 at 5]. The Commissioner directs the Court to the Plaintiff's lack of compliance in her mental health treatment [Doc. 14 at 6-7]. The Commissioner notes that examining sources are not entitled to controlling weight. [Doc. 14 at 10]. The Commissioner argues that the ALJ adopted Dr. Denny's findings, in large part, and to the extent the findings were not adopted, they were inconsistent with the medical evidence in the record. [Doc. 14 at 10-12].

V.     ANALYSIS

The Plaintiff argues that the ALJ erred in assessing the findings of Ellen Denny, Ph.D., and in the residual functional capacity determination, as it relates to the Plaintiff's mental impairments. The Court will address each of the alleged impairments in turn.

A.     **The Findings of Ellen Denny, Ph.D.**

On October 8, 2009,[1] Ellen Denny, Ph.D., performed a consultative examination of the Plaintiff for the Tennessee Disability Determination Services. Dr. Denny detailed her examination of the Plaintiff and her findings. [Doc. 484-87]. Based upon the examination, she reached the following conclusion:

> As far as work related abilities the claimant reports symptoms and medical conditions that would need to be assessed by a physician

---

[1] Dr. Denny did not fill-in the "Date of Examination" space in her examination template [Tr. 484], but the Medical Source Statement she completed indicates that she examined the Plaintiff on October 8, 2009, [Tr. 491].

7

> in determining the limiting effect on ability to work. In regards to cognitive and psychological limitations, the claimant displays moderate impairment in understanding and remembering. She displays moderate impairment in sustaining concentration and attention. She displays mild impairment in interacting with others. She displays moderate impairment in adjusting to changes and requirements.

[Tr. 488].

In an accompanying form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," [Tr. 489], Dr. Denny indicated that the Plaintiff was mildly limited in her ability to interact appropriately with the public, supervisors, and co-workers. [Tr. 490]. Dr. Denny indicated that the Plaintiff was moderately limited in her ability to: respond appropriately to usual work situations and to changes in a routine work setting; understand and remember simple instructions; carry out simple instructions; and make judgments on simple work-related decisions. [Tr. 489-90]. Dr. Denny indicated that the Plaintiff was markedly limited in her ability to: understand, remember, and carry out complex instructions and her ability to make judgments on complex work-related decisions. [Tr. 489].

The opinions of examining sources, like Dr. Denny, are not entitled to controlling weight. See Ealy v. Comm'r Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). Instead, the ALJ must determine the amount of weight to afford to such opinions based upon "the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." Id.; see 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ is not, however, required to discuss all of the relevant evidence in the record or the factors employed for evaluating the evidence. See Boseley v. Comm'r of Soc. Sec, 397 Fed. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each

8

piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); Simons v. Barnhart, 114 Fed. App'x 727, 734 (6th Cir. 2004) (noting that where the ALJ "specifically stated that he was obligated to consider all symptoms, including pain," the ALJ was not required to "separately discuss [plaintiff's] multiple impairments"); Holbrook v. Astrue, 2011 WL 4833122, at *11 (N.D. Ohio Sept. 21, 2011) ("Plaintiff cites no legal authority, and the Court is not aware of any legal authority that requires an ALJ to *discuss* all the relevant factors rather than consider them.")

In this case, the Commissioner argues that Dr. Denny is a non-treating, examining source. [Doc. 14 at 10]. The Plaintiff has not contested this point, and the Court finds that the medical evidence in the record supports this argument. [Tr. 484-91]. The Court finds that Dr. Denny, examined the Plaintiff once, and therefore, is a non-treating, examining source. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007) (finding that a physician who examined the plaintiff once and wrote a single "physical capacity evaluation" was an examining not treating physician).

The ALJ devoted over a page and a half of his opinion to discussing Dr. Denny's findings. [Tr. 72-73]. After detailing the history Plaintiff reported to Dr. Denny and the results of objective testing, the ALJ discussed Dr. Denny's findings as follows:

> The examiner assessed that she functions in the borderline range of intellectual functioning. She was assessed with major depressive disorder, recurrent and borderline intellectual functioning, with a global assessment of functioning (GAF) at 51, within the last few months. The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) shows ratings on the GAF scale of functioning at the time of the evaluation because ratings of current functioning will generally reflect the need for treatment or care. A GAF of 51 to 60 represents symptoms that are moderate regarding social, occupational, or overall general functioning. Moreover, Examiner Denny assessed that she would have marked

9

> impairments in understanding, remembering, and carrying out
> complex instructions, to make judgments on complex work-related
> decisions, but not simple instructions. Further, she has the ability
> to interact appropriately with supervisors, co-workers, and the
> public, as well as respond to changes in the routine work setting.

[Tr. 73]. The ALJ adopted these findings, at least in part, by finding that the Plaintiff retained only the ability to perform "simple, repetitive non-detailed tasks where co-worker and public contact is casual and infrequent, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced." [Tr. 74].

The Plaintiff argues that Dr. Denny "noted work-related mental limitations which were not included in the ALJ's RFC determination," without specifying any particular limitations that should have been included. [Doc. 12 at 10]. The Plaintiff also contends that the ALJ should have considered "possible mental retardation." [Doc. 12 at 10]. She also argues, "Although the ALJ mentioned some of these limitations, he failed to explain the weight accorded to this opinion or why all of the noted limitations were not included in his RFC determination." [Doc. 12 at 10].

Dr. Denny indicated that the Plaintiff was markedly limited in her ability to: understand, remember, and carry out complex instructions and her ability to make judgments on complex work-related decisions. The ALJ incorporated this limitation in his RFC determination. Dr. Denny also indicated that the Plaintiff was moderately limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting, and the ALJ incorporated these findings into his RFC determination.

To the extent that he did not include the other moderate limitations found by Dr. Denny, the ALJ explained:

> [T]he undersigned finds that the claimant's mental impairments
> have resulted in no more than mild restriction of activities of daily
> living; mild difficulties in maintaining social functioning; mild

10

> difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. The record shows that she is able to prepare meals, wash dishes, shop, and read. She was able to demonstrate she could utilize mass transportation to attend the hearing. Also, the record shows that she is able to travel between states for whatever reason while pursuing her disability claim. Therefore, the undersigned is persuaded that, while the claimant's mental and physical impairments affect[] her ability to function, they do not significantly erode her occupational base in that she can perform no work activity.

[Tr. 76].

In regards to the Plaintiff's allegation that the ALJ erred by not including additional medical limitations, which have not been specified by the Plaintiff, and a "possible" finding of mental retardation, the Court finds this allegation of error is not well-taken. While the Plaintiff testified that her sister shopped and performed her household chores, Jeffery Summers, M.D., found that the Plaintiff could perform activities like shopping, preparing meals, and using public transportation, [Tr. 396]. The Plaintiff, herself, reported in her disability application that should could read a newspaper, plan what she wanted to eat, read her mail, talk on the phone with her mother, prepare simple meals daily, pay her bills, and shop for groceries. [Tr. 230-37]. The Plaintiff also moved from Michigan to Tennessee during the period of disability. These findings regarding activities and reported activities constitute substantial evidence supporting the ALJ's decision not to fully credit the level of restriction found by Dr. Denny.

In regards to the Plaintiff's "possible" mental retardation, Dr. Denny's observation that the Plaintiff "appears to be functioning in the borderline range of intellectual ability to mild mental retardation" is not a diagnosis of impairment. The Plaintiff has not directed the Court to any case law or statutory provision that would direct that such an observation be included in the residual functional capacity determination. Nonetheless, the ALJ did consider the Plaintiff's

11

limited mental functioning and limited her to work consisting of simple, repetitive and non-detailed tasks. The Court finds that the ALJ did not err in this regard.

The Court also finds that Plaintiff's allegation that the ALJ improperly failed to explain the weight accorded to Dr. Denny's findings is not well-taken. As stated above, the ALJ is not charged with discussing each aspect of the medical record or with discussing the factors to be considered in evaluating a non-treating opinion in detail. In this case, the ALJ discussed Dr. Denny's findings, at length, and provided his rationale for discounting them in part. The ALJ considered Dr. Denny's findings, consistent with his statutory obligation under 20 C.F.R. §§ 404.1527, 416.927.

### B. Plaintiff's Residual Functional Capacity

A claimant's residual functional capacity is the most a claimant can do in a work setting despite physical and mental impairments, and any related symptoms. See 20 C.F.R. §§ 404.1545(a), 416.945(a). In assessing a claimant's residual functional capacity, the ALJ is to consider all relevant evidence in the case record. §§ 404.1545(a), 416.945(a).

The Plaintiff argues that the ALJ erred by formulating a residual functional capacity for the Plaintiff. The Plaintiff maintains, "The ALJ is simply not qualified to make a medical judgment as to the effects Plaintiff's severe physical impairments would have on her ability to work." [Doc. 12 at 12]. Magistrate Judge Susan Lee, also of the Eastern District of Tennessee, recently addressed this exact argument. Judge Lee observed, "This argument, which rests on a false premise, can be disposed of quickly. 'The Social Security Act instructs that the ALJ—not a physician—ultimately determines the claimant's RFC.'" Hammonds v. Comm'r of Soc. Sec., 2011 WL 3328394, 6 (E.D. Tenn. July 22, 2011) (quoting Coldiron v. Comm'r of Soc. Sec., 391

12

F. App'x 435, 439 (6th Cir.2010)); see also 42 U.S.C. § 423(d)(5)(b)).

The same analysis is adopted by the undersigned. The Court finds that the ALJ did not err by formulating a residual functional capacity for the Plaintiff, and the Court finds that this allegation of error is not well-taken.

VI. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing a restricted range of light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

  s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).